UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

SECURITIES AND EXCHANGE COMMISSION,     )
                                        )
                   Plaintiff,           )
v.                                      )
                                        )
GLOBAL DIGITAL SOLUTIONS, INC.,         )
RICHARD J. SULLIVAN, and                )
DAVID A. LOPPERT,                       )
                                        )
                   Defendants.          )
_____ )

**COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**

Plaintiff Securities and Exchange Commission alleges as follows:

**INTRODUCTION**

1.  The Commission brings this action to enjoin Global Digital Solutions, Inc. ("Global Digital"), its former Chairman and CEO, Richard J. Sullivan, and its former CFO, David A. Loppert (collectively "Defendants"), from further violations of the anti-fraud and reporting provisions of the federal securities laws, and against Defendants Sullivan and Loppert from further violations of the certification provisions of the federal securities laws.

2.  From approximately October 2013 through approximately March 2014, Defendants issued misleading press releases and filings regarding Global Digital's operations, revenue projections, and acquisitions of various companies relating to Global Digital's purported cyber arms manufacturing and security and technology solutions capabilities. At the same time, Global Digital's website falsely described Global Digital as having sophisticated operations and potential revenue growth in these areas.

3.       Global Digital misrepresented in press releases that it planned to merge with a company that had a $95 million exclusive equipment manufacturing contract for sophisticated grenade launchers, when in fact the company had no such contract.

4.       Global Digital also stated in a press release that in the upcoming quarter, it anticipated being able to project annual revenue between $60 million to $75 million, when it had no reasonable basis for this projection.

5.       Global Digital also issued a press release announcing that it had made an offer to acquire a large arms manufacturer for $1.082 billion, while failing to disclose that it had no prospect of financing the purchase and that the arms manufacturer had already rejected Global Digital's offer. Misleading information pertaining to the $1.082 billion acquisition was also included in Global Digital's March 11, 2014 Form 8-K and in its 2014 year end Form 10-K filings with the Commission. Both Sullivan and Loppert signed these filings, falsely attesting to their accuracy.

6.       Sullivan edited, reviewed and approved Global Digital's website where false and misleading press releases were also posted.

7.       Neither Sullivan nor Loppert filed with the Commission Forms 3, Forms 4 or Forms 5 indicating their beneficial ownership in Global Digital's securities.

8.       By reason of the foregoing, Global Digital, Sullivan and Loppert violated Section 17(a)(2) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a)(2), and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5(b) thereunder, 17 C.F.R. § 240.10b-5(b);  Global Digital violated Section 13(a) of the Exchange Act, 15 U.S.C. § 78m(a), and Rules 12b-20, 13a-1, and 13a-11 thereunder, 17 C.F.R. §§ 240.12b-20, 240.13a-1, and 240.13a-11; Sullivan and Loppert violated Section 16(a) of the

Exchange Act, 15 U.S.C. § 78p, and Rules 13a-14(a) and 16a-3 thereunder, 17 C.F.R. §§ 240.13a-14(a) and 240.16a-3; Sullivan and Loppert aided and abetted Global Digital's violations of Sections 10(b) and 13(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78m(a), and Rules 10b-5(b), 12b-20, 13a-1, and 13a-11 thereunder, 17 C.F.R. §§ 240.10b-5, 240.12b-20, 240.13a-1, and 240.13a-11.  Unless the Court enjoins the Defendants, they are reasonably likely to continue to violate these provisions of the federal securities laws.

## DEFENDANTS

9. Global Digital. is incorporated in New Jersey, with its principal place of business located in West Palm Beach, Florida.  Global Digital purports to be in the "cyber arms manufacturing" and "security technology solutions" industry.  Global Digital's common stock is registered with the Commission pursuant to Section 12(g) of the Exchange Act.  Its stock is quoted on the OTC Link marketplace for trading over-the-counter stocks operated by OTC Markets Group, Inc., under the ticker symbol "GDSI."  Global Digital's stock is a "penny stock" under the federal securities laws.  Global Digital was previously named Creative Beauty Supply, Inc., until March of 2004 when Global Digital and Creative Beauty Supply Inc., merged.  Global Digital is delinquent in making required filings with the Commission, having not filed its December 31, 2015 Form 10-K or its March 31, 2016 Form 10-Q.

10. Richard J. Sullivan is a resident of Boynton Beach, Florida.  He was Global Digital's Chairman and Chief Executive Officer during the relevant period.

11. David A. Loppert is a resident of Palm Beach Gardens, Florida.  He was Global Digital's Executive Vice President and Chief Financial Officer during the relevant period.

## JURISDICTION AND VENUE

12. The Court has jurisdiction over this action pursuant to Sections 20(b), 20(d)(1), 20(g), and 22(a) of the Securities Act, 15 U.S.C. §§ 77t(b), 77t(d)(1), 77t(g), and 77v(a); and Sections 21(d) and 27 of the Exchange Act, 15 U.S.C. §§ 78u(d) and 78aa.

13. The Court has personal jurisdiction over the Defendants, and venue is proper in the Southern District of Florida, because many of the Defendants' acts and transactions constituting violations of the Securities Act and the Exchange Act occurred in the Southern District of Florida. In addition, at all relevant times, Global Digital's principal place of business was in the Southern District of Florida, and Sullivan and Loppert resided in the District.

14. In connection with the conduct alleged in the Complaint, the Defendants, directly or indirectly, singly or in concert with others, made use of the means or instrumentalities of interstate commerce, the means or instruments of transportation or communication in interstate commerce, or the mails.

## DEFENDANTS' FRAUDULENT CONDUCT

### A. Global Digital's Business

15. Though previously known as Creative Beauty Supply, Inc., a beauty products supply company incorporated in New Jersey, during the relevant period, Global Digital held itself out to be a company "that is positioning itself as a leader in providing cyber arms manufacturing, complementary security and technology solutions and knowledge-based, cyber-related, culturally attuned social consulting in unsettled areas."

16. On August 12, 2013, Sullivan was appointed as Global Digital's President and Chief Executive Officer, and Loppert was appointed Executive Vice President and Chief Financial Officer. Thereafter, both Sullivan and Loppert were involved in all aspects of Global

4

Digital's business. Loppert resigned his position in April 2015 and Sullivan resigned in May 2016.

17. From at least August 2013 until March 2014, Global Digital operated out of an office in West Palm Beach, Florida; however, it had no customers, never manufactured any "cyber arms" and never provided any "security technology solutions" services or "social consulting in unsettled areas."

B. **Global Digital's False and Misleading Press Releases And Subsequent Private-Placement Fundraising**

1. **The $95 Million Exclusive Manufacturer Contract Press Releases**

18. On October 8, October 11, and October 21, 2013, Global Digital issued three press releases, each touting its impending merger with Airtronic USA, Inc., a company which Global Digital claimed had become the exclusive OEM (Original Equipment Manufacturer) supplier of M203 and M203A grenade launchers for a major international client under a private label agreement with a "first stage value of approximately $95 million." In the October 8, 2013 press release, Sullivan described the announcement as "exciting but not completely unexpected news."

19. Defendants' representation that Airtronic would be the exclusive supplier of $95 million worth of grenade launchers was false and misleading. Airtronic was not positioned to be the OEM for the $95 million agreement referenced in the release, as this agreement never actually existed. Indeed, Airtronic only had an order for grenade launchers and accompanying equipment worth approximately $300,000. The then CEO of Airtronics repeatedly requested Global Digital to remove these misleading statements from Global Digital's website and specifically cited its failure to do so as one of the reasons why Airtronics terminated its merger agreement with Global Digital.

5

20. On November 11, 2013, only a few weeks after the misleading October 21, 2013 press release, Global Digital raised $50,000 from investors through a private placement offering.

### 2. The $60 Million to $75 Million Annual Revenue Projection Press Release

21. On November 15, 2013, Global Digital issued a press release stating that in the upcoming first quarter of 2014, it anticipated being able to project annual revenue between $60 million to $75 million because it expected that it would be able to announce several acquisition agreements for its "targeted global growth strategy."

22. Global Digital's revenue projections were false and misleading, and it had no basis for them. First, during the fourth quarter of 2013, Global Digital had only $509,224 in cash and no credible financing in place to acquire any of these companies. Second, Global Digital only undertook financial due diligence on *one* company after the issuance of its November 15, 2013 press release.

23. Global Digital never acquired any of the companies referenced in its press release and never informed the public that their projected annual revenue would not be reached.

### 3. The March 11, 2014 and March 12, 2014 Remington Press Releases

24. On March 11, 2014, Global Digital issued a press release announcing that the company had issued an unsolicited letter of intent to acquire Remington Outdoor Company, Inc. ("Remington"), also known as Freedom Group, Inc., a large arms manufacturer located in the United States. The press release stated that Global Digital had made an unsolicited offer on March 10, 2014, to purchase Remington for $1.082 billion in cash. The press release further represented that Global Digital was pursuing two acquisitions in addition to the Remington offer. Sullivan detailed several reasons why he was optimistic about the potential acquisitions, and was

6

quoted as saying that the company was "extremely excited and confident about all three of these proposed acquisitions."

25. This press release was false and misleading. During the first quarter of 2014 Global Digital had less than $272,000 in cash and had no credible financing options to pursue this acquisition. Additionally, Sullivan and Loppert knew as early as January 2014 that Remington only wanted a fully-financed, cash-only deal and the investment bank assisting Global Digital in presenting the offer never attempted to find financing options for the Remington deal because the parties did not have a signed offer letter. Indeed, Sullivan and Loppert knew the Remington offer had repeatedly been rejected and therefore Sullivan had no reason to be "excited" or "confident" about the proposed Remington acquisition.

26. Global Digital failed to consummate either of the other two deals referenced in the press release. No subsequent press releases were issued informing the public that these acquisitions did not go forward.

27. On March 12, 2014, Global Digital issued an identical press release included with its Form 8-K, with one minor correction, stating that the offer to acquire Remington was for $1.082 billion "in cash and shares" of Global Digital common stock, instead of just cash per the March 11, 2014 release. However, the content still contained the same false and misleading information since Sullivan and Loppert knew that Remington had already rejected the offer and would only consider a fully-financed, cash-only deal. Moreover, again, Global Digital had less than $272,000 in cash and no imminent, credible financing when it made this statement.

## C. **Global Digital's False and Misleading SEC Regulatory Filings**

### 1. **Global Digital's False and Misleading Form 8-K**

28.     On March 11, 2014, the same day that Global Digital issued a press release announcing its unsolicited offer to purchase Remington, Global Digital also filed a Form 8-K containing the same information and attaching a copy of the March 11, 2014 press release as an exhibit.  Sullivan signed this Form 8-K.

29.     This Form 8-K represented that Global Digital had submitted a non-binding offer, dated January 27, 2014, and received "no response" to such offer, which by its terms then expired on February 17, 2014.

30.     The next day, on March 12, 2014, the March 11, 2014 Form 8-K was amended via an explanatory note clarifying that the offer to purchase Remington contemplated cash and stock, rather than just cash as stated in the March 11, 2014 press release.  This amended Form 8-K was resigned and refiled by Loppert.

31.     These Forms 8-K were false and misleading.  It was not true that Global Digital received "no response" to its offer.  In fact, Global Digital received various communications from the investment banker representing Remington's shareholders, and these communications were always consistent:  Remington had no interest at all in Global Digital's offer; the investment banker repeatedly told Global Digital's investment banker that Remington was only interested in a fully-financed, cash-only deal; Remington rejected the deal on several occasions, including after the January 27, 2014 offer and the March 10, 2014 offer.  Remington's investment banker relayed these rejections to Global Digital's investment banker, and this individual communicated these rejections to Sullivan and Loppert  prior to the release of the March 12, 2014 Form 8-K.

32. It was also misleading to announce publicly an offer to purchase a company for over $1 billion (whether in cash or in cash and stock), given that Global Digital had less than $272,000 in cash and had no credible financing options to support making such an offer. Moreover, Sullivan and Loppert knew Remington was only interested in a fully-financed, cash-only deal as early as January 2014.

### 2. Global Digital's False and Misleading Form 10-K

33. After Global Digital filed the March 11, 2014 and March 12, 2014 Forms 8-K and companion press release, various news sources reported on Global Digital's offer to purchase Remington. Many of these sources also referenced an internal memorandum written by Remington's CEO/Chairman which dismissed Global Digital's offer as a publicity stunt that lacked any credible financing. On March 17, 2014, Sullivan wrote a letter to Remington's CEO/Chairman, asking to speak with him and "dispel these misguided notions and set the record straight."

34. On March 28, 2014, approximately two weeks after Global Digital issued its Forms 8-K and companion press release regarding the Remington offer, the company filed its Form 10-K, stating that Global Digital had not received a response to its offer and would "continue efforts to enter into discussions with a view of moving forward" with the offer.

35. The statements contained in the Form 10-K were false and misleading, as Global Digital knew it had no chance of consummating the Remington offer and had no means of financing such an acquisition. In fact, no deal was ever consummated and no correction was ever issued. Both Sullivan and Loppert were fully aware that Remington's CEO/Chairman dismissed the offer and yet both signed the March 28, 2014 Form 10-K without changing any of the language contained in the March 11, 2014 Form 8-K.

### D. Global Digital's Misleading Website

36. Global Digital's website, which Sullivan authored, reviewed or approved, contained the November 15, 2013 and "corrected" March 12, 2014 press releases. Moreover, the October 8, October 11 and October 21, 2013 press releases were also available on the website until Global Digital removed or modified them.

### E. Sullivan and Loppert Failed to File Statements of Beneficial Ownership of Securities on Forms 3, 4 and 5

37. Global Digital became an effective reporting company with the Commission on October 10, 2013. At that time, both Sullivan and Loppert owned shares of Global Digital stock, and both failed to file an Initial Statement of Beneficial Ownership, known as Form 3.

38. On March 5, 2014, Sullivan was granted 3 million stock options of Global Digital stock and Loppert was granted 1.5 million. Neither filed a Statement of Changes in Beneficial Ownership of Securities, known as Form 4.

39. As indicated in Global Digital's Form 10-K, dated March 30, 2015, Sullivan owned 30,240,000 shares of Global Digital Stock and Loppert owned 9,500,000. Together both Sullivan and Loppert owned just over 36% of Global Digital stock as of March 26, 2015. At no time did Sullivan or Loppert file an Annual Statement of Beneficial Ownership of Securities, known as Form 5.

## CLAIMS FOR RELIEF

## COUNT I

### Violation of Section 17(a)(2) of the Securities Act
### (As to Global Digital, Sullivan and Loppert)

40. The Commission repeats and realleges Paragraphs 1 through 39 of its Complaint.

41. Global Digital, Sullivan and Loppert, in the offer or sale of securities by use of the means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly negligently obtained money or property by means of untrue statements of material facts and omissions to state material facts necessary to make the statements made, in the light of the circumstances under which they were made, not misleading.

42. By reason of the foregoing, Global Digital, Sullivan and Loppert violated and, unless enjoined, are reasonably likely to continue to violate, Section 17(a)(2) of the Securities Act, 15 U.S.C. § 77q(a)(2).

## COUNT II

### Violation of Section 10(b)
### of the Exchange Act and Exchange Act Rule 10b-5(b)
### (As to Global Digital, Sullivan and Loppert)

43. The Commission repeats and realleges Paragraphs 1 through 39 of its Complaint.

44. Global Digital, Sullivan and Loppert, directly or indirectly, by use of any means or instrumentality of interstate commerce or of the mails, knowingly or recklessly made untrue statements of material facts and omitted to state material facts necessary in order to make the statement made, in light of the circumstances under which they were made, not misleading, in connection with the purchase or sale of securities.

45. By reason of the foregoing, Global Digital, Sullivan and Loppert violated and, unless enjoined, are reasonably likely to continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5(b), 17 C.F.R. § 240.10b-5(b).

## COUNT III

### Aiding and Abetting Violations of Section 10(b) of the Exchange Act and Rule 10b-5(b) thereunder
### (As to Sullivan and Loppert)

46. The Commission repeats and realleges Paragraphs 1 through 39 of this Complaint as if fully set forth herein.

47. Defendant Global Digital directly or indirectly, by use of any means or instrumentality of interstate commerce, or of the mails, knowingly or recklessly made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, in violation of Section 10(b) of the Exchange Act and Rule 10b-5(b), 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5(b). Defendants Sullivan and Loppert knowingly or recklessly substantially assisted Global Digital's violations of Section 10(b) and Rule 10b-5(b) of the Exchange Act. Unless enjoined, Defendants Sullivan and Loppert are reasonably likely to continue to provide substantial assistance to again aid and abet Global Digital's violations.

## COUNT IV

### Violations of Section 13(a) of the Exchange Act and Exchange Act Rules 12b-20, 13a-1, and 13a-11
### (As to Global Digital)

48. The Commission repeats and realleges Paragraphs 1 through 39 of this Complaint as if fully set forth herein.

49. Defendant Global Digital violated Section 13(a) and Rules 12b-20, 13a-1, and 13a-11 of the Exchange Act, by knowingly or recklessly failing to timely and accurately file

12

reports with the Commission; omitting information necessary to make the required information, in the light of the circumstances under which they were made, not misleading; and by filing or causing to be filed with the Commission materially false and misleading financial and information statements.

50. By reason of the foregoing, Defendant Global Digital violated, and is reasonably likely to continue to violate, unless enjoined, Section 13(a) of the Exchange Act, 15 U.S.C. § 78m(a), and Rules 12b-20, 13a-1, and 13a-11 thereunder, 17 C.F.R. §§ 240.12b-20, 240.13a-1, and 240.13a-11.

## COUNT V

### Aiding and Abetting Global Digital's Violations of Section 13(a) and Rules 12b-20, 13a-1, and 13a-11 of the Exchange act
(As to Sullivan and Loppert)

51. The Commission repeats and realleges Paragraphs 1 through 39 of this Complaint as if fully set forth herein.

52. Defendants Sullivan and Loppert aided and abetted Global Digital's violations of Section 13(a), 15 U.S.C. §78m(a), and Rules 12b-20, 13a-1, and 13a-11 of the Exchange Act, by knowingly or recklessly substantially assisting Global Digital, which failed to timely and accurately file reports with the Commission; omitted information necessary to make the required information, in the light of the circumstances under which they were made, not misleading; and by filing or causing to be filed with the Commission materially false and misleading informational statements.

53. Unless enjoined, Sullivan and Loppert are reasonably likely to continue to provide substantial assistance to again aid and abet Global Digital's violations, unless enjoined, of Section 13(a) of the Exchange Act, 15 U.S.C. § 78m(a), and Rules 12b-20, 13a-1, and 13a-11 thereunder, 17 C.F.R. §§ 240.12b-20, 240.13a-1, and 240.13a-11.

## COUNT VI

### Violations of Rule 13a-14 of the Exchange Act
### (As to Sullivan and Loppert)

54. The Commission repeats and realleges Paragraphs 1 through 39 of this Complaint as if fully set forth herein.

55. Defendants Sullivan and Loppert, in violation of Rule 13a-14 of the Exchange Act, directly or indirectly, as officers or directors of an issuer, falsely certified in an annual report that based on their knowledge, the disclosure report did not contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by the report.

56. By reason of the foregoing, Defendants Sullivan and Loppert violated, and are reasonably likely to continue to violate, unless enjoined, Exchange Act Rule 13a-14, 17 C.F.R. § 240.13a-14.

## COUNT VII

### Violations of Section 16(a) and Rule 16a-3 of the Exchange Act
### (As to Sullivan and Loppert)

57. The Commission repeats and realleges Paragraphs 1 through 39 of this Complaint as if fully set forth herein.

58. Section 16(a) of the Exchange Act and Rule 16a-3 thereunder require officers, directors and beneficial owners of more than ten percent of any class of equity security registered pursuant to Section 12 of the Exchange Act to file periodic reports disclosing ownership.

59. Defendants Sullivan and Loppert were required to file Forms 3, 4, and 5 and failed to do so.

60. By reason of the foregoing, Defendants Sullivan and Loppert violated, and are reasonably likely to continue to violate, unless enjoined, Section 16(a) of the Exchange Act, 15 U.S.C. § 78p(a), and Rule 16a-3 thereunder, 17 C.F.R. § 240.16a-3.

## RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests that the Court:

### I.

### Permanent Injunctive Relief

Issue permanent injunctions pursuant to Section 20(b) of the Securities Act, 15 U.S.C. § 77t(b), and Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d), restraining and enjoining Global Digital, Sullivan and Loppert, their officers, agents, servants, employees, attorneys, representatives, and all persons in active concert or participation with them, and each of them, from directly or indirectly violating Section 17(a)(2) of the Securities Act, 15 U.S.C. § 77q(a)(2), and Sections 10(b), 13(a), 16(a) of the Exchange Act, 15 U.S.C. §§ 78j(b), 78m(a), 78p(a), and Rules 10b-5(b), 12b-20, 13a-1, 13a-11, 13a-14 and 16a-3, 17 C.F.R. §§ 240.10b-5(b), 240.12b-20, 240.13a-1, 240.13a-11, 240.13a-14, and 240.16a-3.

### II.

### Civil Penalties

Issue an Order directing Global Digital, Sullivan and Loppert to pay a civil money penalty pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3).

### III.

### Disgorgement

Issue an Order directing Global Digital to disgorge all ill-gotten gains, including prejudgment interest, resulting from the acts or courses of conduct alleged in this Complaint.

### IV.

### Officer and Director Bar

Issue an Order, pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.C. §78u(d)(2) barring Defendants Sullivan and Loppert from serving as an officer or director of any issuer that has a class of securities registered pursuant to Exchange Act Section 12 (15 U.S.C. § 78l], or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. §78o(d)].

### V.

### Penny Stock Bar

Issue an order barring Defendants Sullivan and Loppert from participating in any offering of penny stock, pursuant to Section 20(g) of the Securities Act, 15 U.S.C. § 77t(g), Section 21(d)(6) of the Exchange Act, 15 U.S.C. § 78(u)(d)(6).

### VI.

### Further Relief

Grant such other further relief as may be necessary and appropriate.

### VII.

### Retention of Jurisdiction

Further, the Commission respectfully requests that the Court retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

## **DEMAND FOR JURY TRIAL**

The Commission hereby demands trial by jury.

Respectfully submitted,

August 11, 2016        By:     *s/ Russell Koonin*
                                Russell Koonin
                                Senior Trial Counsel
                                Fla. Bar No. 474479
                                Direct Dial:  (305) 982-6385
                                Facsimile:  (305) 536-4154
                                E-mail: kooninr@sec.gov

                                Christine Nestor
                                Senior Trial Counsel
                                Fla. Bar No. 597211
                                Direct Dial:  (305) 982-6367
                                Facsimile:  (305) 536-4154
                                E-mail: nestorc@sec.gov

                                Jacqueline M. O'Reilly
                                Counsel
                                Fla. Bar No. 29326
                                Direct Dial:  (305) 416-6296
                                E-mail: oreillyj@sec.gov

                                Attorneys for Plaintiff
                                SECURITIES AND EXCHANGE COMMISSION
                                801 Brickell Avenue, Suite 1800
                                Miami, Florida 33131
                                Telephone:  (305) 982-6300